IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| GEORGIA M. TOOMER, | ) | C/A 5:06-2337-RBH-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -versus- | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| SOUTH CAROLINA BANK AND TRUST, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This employment discrimination case has been filed by the Plaintiff pursuant to 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq..  Plaintiff also asserts a state law claim for breach of contract.

The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on May 25, 2007.  After receiving an extension of time to reply, Plaintiff filed a memorandum in opposition to the motion on June 18, 2007, following which a reply memorandum was filed by the Defendant on June 25, 2007.  Defendant's motion is now before the Court for disposition.[1]

_____

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C.  The Defendant has filed a motion for summary judgment.  As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

1



### Background and Evidence[2]

Plaintiff was employed by the Defendant at its Bamberg, South Carolina branch from November 1, 1999 through September 29, 2004. Plaintiff, an African-American, was at all times during the course of her employment supervised by Branch Manager Ronald Maxwell (white). Plaintiff was originally hired to be a part-time Teller I. At Maxwell's initiation, Plaintiff was promoted to part-time Teller III in January 2003, and thereafter promoted again to full-time Vault Teller in February 2003. Plaintiff's Deposition, pp. 22-24, 27-30;[3] Maxwell Deposition, pp. 6-7, 12.

When Plaintiff was first hired, the Financial Services Representative (FSR) position was held by Sue Watson. In 2001, while Plaintiff was still a part-time employee, Ashley Zeigler (white) was promoted to full-time FSR, a position she presently holds as well as the position of Assistant Branch Manager. Plaintiff's Deposition, p. 43; Maxwell Deposition, pp. 8, 25; Dunn Affidavit, ¶ 8; Zeigler Affidavit, ¶ 1. Plaintiff concedes that at the time Zeigler moved into the FSR position, she [Plaintiff], as a part-time employee, was not eligible for the position. Plaintiff's Deposition, p. 43.

Due to the small size of the Bamberg branch, the employees cross-trained in a variety

---

[2]The facts and evidence are considered and discussed hereinabove in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).

[3]Plaintiff has submitted an affidavit as an exhibit to her memorandum in opposition to summary judgment in which she discusses some of these same events. To the extent Plaintiff's version of these events in her affidavit differs from her deposition testimony, they have not been considered. Bickenstaff v. Vassar College, 196 F.3d 435, 455 (2d cir. 1999) ["It is beyond cavil that a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that...contradicts the affiant's previous deposition testimony."] (internal quotations and citations omitted); Kennedy v. Allied Mutual Ins. Co., 952 F2d 262, 266 (9th Cir. 1991) [party cannot create issue of fact by contradicting prior deposition testimony].



of positions to ensure that all of the duties at the branch could be covered in the event of absenteeism. Maxwell Deposition, p. 13; Dunn Affidavit, ¶ 9.  Both Plaintiff and another employee, Tanya Crosby (white), were asked to cross-train as a back-up FSR and to attend FSR school.  Maxwell Deposition, pp. 27-28; Crosby Deposition, p. 8; Plaintiff's Deposition, pp. 54, 58.  The requirements for the FSR position included two weeks of schooling.  Plaintiff's Deposition, p. 38.

The first time Plaintiff was scheduled to attend the FSR school she did not go, testifying that she had been too busy at work to go at that time.  Plaintiff's Deposition, pp. 54-55; see also Maxwell Deposition, p. 27.  Crosby did attend school when she was scheduled to go, and after returning from school worked with Zeigler as a back-up FSR to gain experience in this area. Plaintiff's Deposition, p. 57; Maxwell Deposition, pp. 27-28; Crosby Deposition, pp. 8, 11; Zeigler Affidavit, pp. 2-3.  Two African-American employees, Robin Houser and Merinda Kelly, also worked as back-up FSRs during Plaintiff's period of employment. Plaintiff's Deposition, pp. 47-48.[4]

Plaintiff did eventually attend the FSR school, but testified that after she returned she was unable to do any FSR training because she was simply too busy with her duties as a teller. Plaintiff testified that it was Maxwell's responsibility for "staffing the [teller] line"; however, she never told Maxwell that she was unable to work at the FSR desk because of her teller line responsibilities.  Plaintiff's Deposition, pp. 60-61. Plaintiff testified that Crosby continued to work back-up on the FSR desk.

Plaintiff testified that she would have liked to have been an FSR, and that when she noticed that Zeigler had moved to another position, she asked Maxwell who was going to work the

---

[4]A third African-American employee, Dorine Lee, also performed this function after Plaintiff left the bank.  Plaintiff's Deposition, pp. 48-49; see also Maxwell Deposition, pp. 8-9; Dunn Affidavit, ¶ 10.



FSR desk.  Plaintiff's Deposition, pp. 57, 69.  Plaintiff testified, however, that Crosby was moved

into the position "behind [her] back".  Plaintiff's Deposition, p. 70.  When Plaintiff complained to

Maxwell, he her told that Zeigler was still the FSR, and that there was no open FSR position. As for

Plaintiff's testimony that Crosby had turned in her teller keys (implying that she was no longer a

teller), Maxwell testified that Crosby had not "signed in her teller keys", and that Crosby did not sign

her keys in until she had left the Bamberg branch to go to the Denmark branch.  Maxwell Deposition,

pp. 30-31.

          In June 2004 Plaintiff filed a charge of discrimination with the South Carolina Human

Affairs Commission (SCHAC) alleging that she had been discriminated against on the basis of her

race because she had been "overlooked for a promotion...."; Plaintiff's Deposition, pp. 115-116, and

Deposition Exhibit 9;[5] although Maxwell testified that Plaintiff had never made any complaints to

him about how she was being treated with regard to her race.  Maxwell Deposition, p. 31. Plaintiff

also testified that when she complained to Maxwell about Crosby becoming an FSR,  she never said

anything about race being a factor.  Plaintiff's Deposition, pp. 88-89. Plaintiff testified that she had

generally discussed racial matters with two co-employees at the bank, Tina Creech and Merinda

Kelly,[6] but acknowledged that she had never made any verbal reports to anyone at the bank that she

was being discriminated against on the basis of her race, nor had she ever filed any written report

making this claim. Plaintiff's Deposition, pp. 87-88.  When asked why she didn't say anything about

---

          [5]Plaintiff's SCHAC Complaint also included a charge that Plaintiff had been discriminated
against because of her age (48); however, Plaintiff is not asserting any claim with respect to her age
in this lawsuit.

          [6]No affidavits or deposition testimony has been submitted from either of these two
individuals.



her belief that she had not been offered the FSR position because of her race, Plaintiff testified: "I don't have to say everything I feel....I just didn't say it." <u>Plaintiff's Deposition</u>, p. 91.

Plaintiff testified that after she filed her SCHAC complaint in June 2004, she got the "silent treatment" from "pretty much everybody in the branch." When asked how she knew this was based on her having filed a SCHAC complaint, Plaintiff testified: "I don't know. I can't read their minds but I...the atmosphere changed after that." <u>Plaintiff's Deposition</u>, p. 134. Plaintiff also testified that Maxwell was "quieter than what he normally was". When asked if Maxwell had done anything else, Plaintiff testified "[t]hat's about it, you know." <u>Plaintiff's Deposition</u>, pp. 135-136. Plaintiff also testified that on one occasion Zeigler told her she had not followed the proper audit procedure when opening the vault. <u>Plaintiff's Deposition</u>, pp. 138-139. Finally, Plaintiff also received two written warnings for being short money in her teller drawer, one on August 17, 2004 and another on September 20, 2004. However, Plaintiff testified that she had no reason to think these warnings were not proper, nor did she believe they were discriminatory in any way. <u>Plaintiff's Deposition</u>, pp. 106-107, 109-110; <u>Deposition Exhibits 6 & 7</u>.[7] When asked at her deposition if she could think of any other instances of retaliation, she testified "[n]ot that I can think of off the top of my head right this second." <u>Plaintiff's Deposition</u>, p. 140.

Nevertheless, Plaintiff continued to complain about not being given an FSR position; <u>see</u> <u>Plaintiff's Deposition</u>, pp. 148-149, <u>Deposition Exhibits 18 & 19</u>; and on September 29, 2004 she resigned her position with the bank. <u>Plaintiff's Deposition</u>, pp. 79, 133 and <u>Deposition Exhibit 3</u>; <u>Maxwell Deposition</u>, pp. 24-25. <u>See also</u> <u>Dunn Affidavit</u>, ¶¶ 6, 11-12. Plaintiff thereafter filed a

---

[7]Plaintiff had also received warnings for similar policy violations in November 2003 and May 2004, prior to the filing of her SCHAC Complaint. <u>Plaintiff's Deposition</u>, pp. 101-104; <u>see</u> <u>also</u> <u>Deposition Exhibits 4 & 5</u>.



second charge of discrimination on September 16, 2005, alleging that she had been retaliated against for filing her first charge of discrimination, and that she had been "forced to resign my employment....".  Plaintiff's Deposition, Exhibit 14.

In this lawsuit, Plaintiff alleges that she was not promoted to the FSR position because of her race in violation of 42 U.S.C. § 1981, that she was unlawfully retaliated against for having engaged in protected conduct in violation of § 1981, that she was constructively discharged from her employment in violation of Title VII, and that the Defendant also breached her employment contract.

### Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P.  The moving party has the burden of proving that judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

### I.

### (Promotion Claim)

Plaintiff alleges that she was discriminated against on the basis of her race when she failed to receive a promotion to the position of Financial Services Officer.  Plaintiff's promotion claim is brought under 42 U.S.C. § 1981, which requires proof that the Defendant "intended to discriminate [against the Plaintiff] on the basis of [her] race, and that the discrimination interfered with a contractual interest." Denny v. Elizabeth Arden Salons, Inc., 456 F.3d 427, 434 (4th Cir.

6



2006).[8]   The standards applicable to lawsuits under § 1981 are basically the same as the standards applicable to lawsuits under Title VII, with the same caselaw being used to evaluate a claim under either statute. See Ross v. Kansas City Power & Light Co., 293 F.3d 1041, 1050 (8th Cir. 2002) [”In analyzing a claim...under section 1981, we apply the same standards as in a similar Title VII claim.”]; Long v. First Union Corp. of Virginia, 894 F.Supp. 933, 945 (E.D.Va. 1995); Kim v. Nash Finch Co., 123 F.3d 1046, 1063 (8th Cir. 1997).[9]

Plaintiff's claim requires proof of intentional discrimination, either by direct evidence or by the structured procedures set forth  in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See also Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981).  Plaintiff has no direct evidence that she was discriminated against because of her race. See discussion, infra.[10] Therefore, Plaintiff must proceed under the McDonnell Douglas framework.

The United States Supreme Court articulated a three-part analysis for analyzing discrimination claims in McDonnell Douglas.  First, the Plaintiff must establish a prima facie case

---

[8]Defendant argues that Plaintiff was an at-will employee.  However, for purposes of Plaintiff's claims under § 1981, it does not matter if she had an employment contract or if she was at-will. See  Spriggs v. Diamond Auto Glass, 165 F.3d 1015, 1018-1019 (4th Cir. 1999) [holding that even an at-will employment relationship is contractual and may serve as a predicate for a § 1981 claim].

[9] The main difference between Title VII claims and claims brought under § 1981 is that individual liability is possible under § 1981; Dalton v. Jefferson Smurfit Corp., 979 F.Supp. 1187, 1201-1203 (S.D.Ohio 1997); cf. Lissau v. Southern Foods Serv., Inc., 159 F.3d 177, 180-181 (4th Cir. 1998); although no individual liability is asserted in this case.

[10]Direct evidence is "[e]vidence, which if believed, proves existence of fact in issue without inference or presumption." Black's Law Dictionary, 460 (6th Ed. 1990) (citing State v. McClure, 504 S.W. 2d 664, 668 (Mo. Ct. App. 1974)).  In other words, direct evidence is evidence that, by itself, proves the discrimination. See Williams v. General Motors Corp., 656 F.2d 120, 130 (5th Cir. 1981), cert. denied 455 U.S. 943 (1982).  This is in contrast to circumstantial evidence, which is evidence from which discrimination may be inferred.



of discrimination.  Once a prima facie case has been established, a rebuttable presumption is created that the employer unlawfully discriminated against the Plaintiff.  Second, once this presumption has been established, the burden of production shifts to the employer to show a legitimate, non-discriminatory reason for its actions.  Third, if the employer shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the employer's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the employer were really based on the Plaintiff's race.  McDonnell Douglas, 411 U.S. at 802-805; Texas Dep't of Community Affairs, 450 U.S. at 252-256; Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234-235 (4th Cir. 1991).[11]

        In order to establish a prima facie case of discrimination with regard to her promotion claim, Plaintiff must show the following: 1) that she is a member of a protected class; 2) that she applied for the position in question; 3) that she was qualified for the position; and 4) that she was rejected for the position in favor of someone from outside of her protected class, or there is some other evidence giving rise to an inference of unlawful discrimination.  Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1129 (4th Cir. 1995), citing Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994); see also Alvarado v. Bd. of Trustees of Montgomery Community College, 928 F.2d 118, 121 (4th Cir. 1991).[12]  It is undisputed that Plaintiff is a member of a protected class (African American), and Defendant also does not contest for purposes of summary judgment that Plaintiff was otherwise

---

        [11]Despite these shifting burdens of production, the Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout.  Texas Dep't of Community Affairs, 450 U.S. at 252-253; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

        [12]The exact standard to be used in establishing a prima facie case is flexible depending on the factual situation and the claim alleged.  Ennis v. National Ass'n of Business and Educational Radio, Inc., 53 F.3d 55, 58(4th Cir. 1995).



qualified for the FSR position.  Defendant does contend, however, that Plaintiff cannot show that she ever applied for the position at issue, arguing that there was never any vacancy in the FSR position for her to ever apply for.

Specifically, Defendant argues that Zeigler continued to hold the FSR position during the entire time period at issue, that she never left that position, and that Crosby was never therefore promoted into that position over the Plaintiff or anyone else.   The Defendants have submitted an affidavit from Zeigler in which she attests that, since accepting the Bamberg FSR position in 2001, she has been the only FSR at the Bamberg branch, and that at no time has anyone else been hired or promoted into the FSR position at the branch.  Zeigler further attests that being a back-up or cross-trained on a position does not mean that an employee "holds" that position, nor does assisting with a position as a back-up mean the position is vacant or available.  See Zeigler Affidavit, ¶¶ 2-4. Defendants have also submitted an affidavit from Leslie Dunn, Senior Vice President and Human Resources Manager for the Defendant, who attests that, pursuant to the Defendant's job posting policy, any new job or vacant position is posted on the Defendant's Intranet for three days prior to the Defendant seeking external applicants, and that during the period 2003 - 2004 there was never an FSR vacancy at the Defendant's Bamberg branch, that the Defendant never posted a vacancy for any FSR position on its Intranet, that it never accepted applications for any such position, and that it never conducted interviews for any such position.  Dunn further attests that Ashley Zeigler has been the only FSR at the Defendant's Bamberg branch since August 2001, and that she continues to hold that position today along with the position of Assistant Branch Manager.  Dunn Affidavit, ¶¶ 3-8.          In support of her claim Plaintiff testified that, contrary to Dunn's assertions about how vacancies are filled at the Bank, she did not apply for either one of her previous promotions, and that



it was her experience that the Bank usually moved people around according to seniority.  Plaintiff's

Deposition, pp. 29-30.  However, Plaintiff conceded that the Defendant does maintain job postings

on its Intranet system, and she did not know if the position she had been promoted into (Vault Teller)

was ever advertised prior to her receiving that promotion. Plaintiff testified that Maxwell simply

asked her if she would like to take over the position, and she said yes.  Plaintiff's Deposition, pp. 30-

32.   As for the Defendant's evidence to the effect that Crosby was never promoted into an FSR

position and that Zeigler was the only FSR at the Bamberg branch, Plaintiff has presented copies of

two bank status reports from June 2004, one for tellers and one for FSRs.  See Plaintiff's Affidavit

Exhibits 2 & 3. The teller status report does not list Crosby as a teller, while the FSR status report

does include Tanya Crosby's name, with Crosby being shown as being at the Bamberg branch.

While Zeigler is also listed on the FSR status report as clearly doing the lions share of the FSR work

at the Bamberg branch, Crosby is nevertheless also shown as doing a substantial amount of FSR work

on that report.  Defendant has provided no explanation as to why Crosby is  listed only as an FSR

employee on the status reports provided to the Court. Plaintiff further testified that she had expressed

an interest in any FSR opening to Maxwell.

          At least for purposes of summary judgment, there is a sufficient question of fact in this

evidence as to whether there was an FSR position filled by Crosby for which Plaintiff had expressed

an interest to survive summary judgment.  Muhammad v. Klotz, 36 F.Supp.2d 240, 243 (E.D.Pa.

1999) ["Thus, at the summary judgment stage the only inquiry is the threshold one of determining

whether there is the need for a trial, that is, 'whether the evidence presents a sufficient disagreement

to require submission to [the trier of fact] or whether it is so one-sided that one party must prevail

as a matter of law'"], citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-252 (1986).  Finally,



assuming there was an FSR opening at the Bamberg branch, the evidence reflects that it was filled by someone from outside of Plaintiff's protected class (Crosby).    Therefore, the evidence is sufficient to establish Plaintiff's prima facie case.  <u>Texas Dep't of Community Affairs</u>, 450 U.S. at 253 [the burden of establishing a prima facie case is not onerous]; <u>see</u> <u>Proud v. Stone</u>, 945 F.2d 796, 798 (4th Cir. 1991) [when considering whether a Plaintiff has presented a prima facie case under the <u>McDonnell Douglas</u> proof scheme, a Court should "...resist the temptation to become so entwined in the intricacies of the proof scheme [set out in <u>McDonnell Douglas</u>] that [it] forget[s] that the scheme exists solely to facilitate determination of 'the ultimate question of discrimination <u>vel</u> <u>non</u>'."].

Nevertheless, Defendant's evidence sets forth a legitimate, non-discriminatory reason for Plaintiff's failure to obtain an FSR position at the Bamberg branch sufficient to rebut the inference of discrimination created by the establishment of Plaintiff's prima facie case.  <u>EEOC v. Clay Printing Co.</u>, 955 F.2d 936, 941 (4th Cir. 1992). [ADEA case] [The defendant's burden in establishing a legitimate, non-discriminatory reason is only one of production, not of persuasion.]; <u>see</u> <u>also</u> <u>Lovelace v. Sherwin-Williams Co.</u>, 681 F.2d 230, 239 (4th Cir. 1982).  Therefore, to survive summary judgment, Plaintiff's evidence must be sufficient to set forth a genuine issue of fact as to whether the Defendant's proffered explanations are a mere pretext for discriminatory conduct, and that "but for" her employer's true intent to discriminate against her because of her race, she would not have suffered the claimed adverse employment action.  <u>EEOC.</u>, 955 F.2d at 941; <u>Conkwright</u>, 933 F.2d at 234. "Direct or indirect evidence of discriminatory motive may do, but 'the evidence as a whole... must be sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by [race animus].'" <u>LeBlanc v. Great American Insurance Co.</u>, 6 F.3d 836, 843 (1st Cir. 1993)(citing <u>Goldman v. First Nat'l Bank</u>, 985 F.2d 1113, 1117 (1st Cir. 1993)(quoting <u>Connell v.</u>



Bank of Boston, 924 F.2d 1169, 1172, n. 3 (1st Cir. 1991), <u>cert</u>. <u>denied</u>, 111 S.Ct. 2828 (1991));

<u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 141-143 (2000). Plaintiff has failed to

present any such evidence.

        While Plaintiff argues that a racial animus is demonstrated by the fact that Crosby got

to train as an FSR while she did not, Plaintiff concedes in her testimony that she chose to stay at her

teller station, and that she never asked Maxwell for any teller help so she could train with Zeigler.

That there was no racial component to this scenario is further bolstered by the fact that two other

African-Americans *were* cross-training in the FSR position during the relevant time period.

<u>Plaintiff's Deposition</u>, pp. 47-48.   Further, even assuming for purposes of summary judgment that

there was an open FSR position at the Bamberg branch that was filled by  Crosby, there is no

evidence whatsoever that a racial animus played any role in this decision. <u>Gumbs v. Hall</u>, 51

F.Supp.2d 275, 280 (W.D.N.Y. 1999) ["the fact that [the person selected for a position]

is...white...[which is outside the protected class] is insufficient, by itself, to give rise to an inference

of discrimination"], <u>aff'd</u>, 205 F.3d 1323 (2nd Cir. 2000).   Plaintiff testified that she loved working

at the Bamberg branch, and that Maxwell was a great boss.  <u>Plaintiff's Deposition</u>, pp. 17-19; 34.

No one had ever made any racial comments to her, and even when Plaintiff complained to Maxwell

about Crosby supposedly getting an FSR position, she did not say that race had anything to do with

it.  <u>Plaintiff's Deposition</u>, pp. 87-89; <u>see</u> <u>also</u> <u>Maxwell Deposition</u>, p. 31.  Indeed, Maxwell was the

one responsible for Plaintiff's promotions in 2003, and Plaintiff has presented no evidence to show

why the same person who had supported her for promotions previously would have later decided not

to promote Plaintiff because of her race.  *Cf*. <u>Evans v. Technologies Applications & Service Co.</u>, 80

F.3d 954, 959 (4th Cir. 1996) [where the person who hired the plaintiff is the same person who

12



refused to promote her, "there is a powerful inference that the failure to promote her was not motivated by discriminatory animus."](internal quotations and citation omitted); <u>Britton v. University of Maryland</u>, No. 03-1650, 2006 WL 3026244 (4th Cir. Oct. 25, 2006) [strong presumption against discrimination where the claim is against the same individuals who hired and promoted the individual].

In sum, Plaintiff has no evidence that she was discriminated against on the basis of her race, other than her own unsubstantiated surmise and speculation.[13] Plaintiff's feelings and beliefs as to what transpired, no matter how heartfelt, are simply not sufficient evidence to defeat a well supported motion for summary judgment. <u>Hawkins v. Pepsico, Inc.</u>, 203 F.3d 274, 281 (4th Cir. 2000) [affirming the grant of summary judgment to the employer where the employee did not "show that...[the] problems were racial in nature"]; <u>Cook v. CSK Transp. Corp.</u>, 988 F.2d 507, 513 (4th Cir. 1993) ["[U]nsupported allegations do not establish a case of race discrimination...."]. At summary judgment, the non-moving party has an obligation to present evidence to save his or her allegations from the status of speculation, and must respond with specific facts showing a genuine issue for trial. Rule 56, Fed.R.Civ.P.; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Gairola v. Virginia Dep't of General Servs.</u>, 753 F.2d 1281, 1288, n.4 (4th Cir. 1985). Although Plaintiff may sincerely believe that she was subjected to race discrimination, she cannot defeat a properly supported motion for

---

[13]While Plaintiff testified that she thought she was more qualified for the FSR job than Crosby, she does not know how well Crosby did at the FSR school. Further, it is clear in the evidence that Crosby trained and performed FSR duties upon her return from school, while the Plaintiff did not. There is no basis in this evidence for the Court to find that Plaintiff was more qualified than Crosby for the FSR position, assuming such a position was open, and in order to succeed on a failure to promote claim, the Plaintiff must ordinarily show that they were more qualified for the position than the individual who actually received the position. See <u>Lowery v. Circuit City Stores, Inc.</u>, 158 F.3d 742, 760 (4th Cir. 1998), <u>rev'd on other grounds</u>, 119 S.Ct. 2388 (1999), <u>aff'd on reh'g</u>, 206 F.3d 431 (4th Cir.  ), <u>cert. denied</u>, 121 S.Ct. 66 (2000).



summary judgment with unsupported speculation   or allegations of discrimination. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985); Felty v. Graves-Humphreys, Co., 818 F.2d 1126, 1128 (4th Cir. 1987); Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) [A party opposing summary judgment "cannot create a general issue of fact through mere speculation or by the building of one inference upon another."].

Therefore, Plaintiff's race discrimination claim should be dismissed.

## II.

### (Retaliation Claim)

In her retaliation cause of action, Plaintiff alleges that after she complained about being discriminated against on the basis of her race, the Defendant took retaliatory action against her including disciplining her for pretextural reasons, not promoting her to the position of FSR, interfering with her reputation in the community and harassing her, and constructively discharging her. See Amended Complaint, ¶ 60.  In order to establish this claim, Plaintiff must first present evidence sufficient to establish a prima facie case, as follows: 1) that she engaged in protected activity; 2) that the Defendant took an adverse employment action against her, and 3) that a causal connection exists between Plaintiff's protected activity and the alleged adverse action(s).  Lettieri v. Equant, Inc., 478 F.3d 640, 650 (4th Cir. 2007); Whatley v. South Carolina Dep't of Pub. Safety, No. 05-0042, 2007 WL 120848, at *7-8 (D.S.C. January 10, 2007).  If Plaintiff establishes a prima facie case, the Defendant employer then has the burden of producing a legitimate, non-discriminatory reason for its actions, and if the employer does so, Plaintiff must then demonstrate that the Defendant's proffered reason for its actions is pretextural. Id.

After careful review and consideration of the materials and arguments presented in

14



this case, the undersigned can find no evidence of unlawful retaliation on the part of the Defendant. While Plaintiff clearly engaged in protected activity when she filed her SCHAC complaint in June 2004; Laughlin v. Metropolitan Washington Airport's Authority, 952 F.Supp. 1129, 1133 (E.D.Va. 1997), aff'd 149 F.3d 253 (4th Cir. 1998);[14] even assuming Plaintiff's testimony with regard to how she was treated following the filing of her SCHAC complaint to be true for purposes of summary judgment, it does not appear that any "adverse employment action" occurred as that term is defined in the applicable caselaw. Plaintiff's testimony that, following the filing of her SCHAC complaint, she got the "silent treatment" from other employees at the branch and that Maxwell was "quieter than what he normally was", is simply not sufficient evidence of an adverse employment action to satisfy this requirement of her prima facie case. See Manning v. Metropolitan Life Ins. Co., Inc., 127 F.3d 686, 692 (8th Cir. 1997) [evidence of employer hostility, disrespect, and ostracism towards employee insufficient to demonstrate an "adverse employment action that constitutes the sort of ultimate employment decision intended to be actionable under Title VII"]; Cooper v. Southern California Edison Co., 170 Fed.Appx. 496, 498 (9th Cir. 2006) ["[A]ny potential ridicule and ostracism (plaintiff) suffered was not an adverse employment action."]; Manatt v Bank of America, 339 F.3d 792, 803 (9th Cir. 2003) [Allegations that plaintiff's supervisor stared at her in an angry way and that co-workers were being mean to her were insufficient to show an adverse employment action]. See also Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981), cert. denied, 454 U.S. 892 (1981); Burlington Industries, Inc. v. Ellerth, 118 S.Ct. 2275, 2261, 2268-2269 (1998) [adverse employment action is

---

[14]Although Plaintiff had also verbally complained to Maxwell about not receiving the FSR position, this was not protected activity for purposes of a retaliation claim because, by Plaintiff's own testimony, she did not complain to Maxwell or any one else in the Bank's hierarchy prior to her SCHAC filing that she believed she had been discriminated against on the basis of her race. Plaintiff's Deposition, pp. 87-89, 91; see also Maxwell Deposition, p. 31.



a significant, tangible employment action, i.e., a significant change in employment status, such as discharge, demotion, or undesirable reassignment]; Crady v. Liberty Nat'l Bank & Trust Co. of Ind., 993 F.2d 132, 136 (7th Cir. 1993)["A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation"]. Cf. Flaherty v. Gas Research Institute, 31 F.3d 451, 456 (7th Cir. 1994) [a "bruised ego" is not enough]; Geisler v. Folsom, 735 F.2d 991, 994-996 (6th Cir. 1984) [no "adverse employment action" where evidence failed to establish any more than bad relations between plaintiff and her supervisor].

Nor do Plaintiff's two written warnings about being short money in her teller drawer satisfy this requirement. See generally, Lewis v. Forest Pharmaceuticals, Inc., 217 F.Supp.2d 638, 648 (D.Md. 2002) ["Reprimands, whether oral or written, do not per se significantly affect the terms or conditions of employment."] (citing Nye v. Roberts, 159 F.Supp.2d 207, 213 (D.Md. 2001) vacated and remanded on other grounds, 2002 WL 31163732 (4th Cir. 2002)]; Oest v. Illinois Dep't of Corrections, 240 F.3d 605, 612-613 (7th Cir. 2001)[job related criticism, including negative performance reviews and oral or written reprimands, does not constitute an adverse employment action absent some tangible job consequence]; Naughton v. Sears, Roebuck & Co., No. 02-4761, 2003 WL 360085 at *5 n. 1 (N.D.Ill. 2003)[criticism, including a negative performance review or development plan, does not constitute an adverse employment action]. In any event, Plaintiff herself testified that she had no reason to think that these warnings were not proper, nor did she believe they were discriminatory in any way. Plaintiff's Deposition, pp. 106-107, 109-110. See Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) [Plaintiff "must have

16



evidence from which a reasonable factfinder could conclude that a causal connection exists between the protected activity and the adverse action(s)"]. Plaintiff offered no other evidence of alleged retaliation.

With respect to Plaintiff's claim that the treatment she received effectively forced her to resign, i.e., that she was constructively discharged, even if the Court were to consider Plaintiff's constructive discharge claim as a claimed " adverse employment action" for purposes of her retaliation claim, Plaintiff has simply presented no evidence to support her allegation that she was constructively discharged.  In order to establish a claim for constructive discharge, Plaintiff must have been subjected to employment practices which were both discriminatory and which made her working conditions intolerable, thus forcing her to quit. Garrett v. Hewlett Packard Co., 305 F.3d 1210, 1221 (10th Cir. 2002) ["Constructive discharge occurs 'when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign'....The bar is quite high in such cases: a plaintiff must show he had no other choice but to quit."]; Amaker v. Winn-Dixie, Greenville, Inc., No. 95-1254, 1995 WL 706873, at **1 (4th Cir. December 1, 1995); EEOC v. Federal Reserve Bank of Richmond, 698 F.2d 633, 672 (4th Cir.), rev'd in part on unrelated grounds, 467 U.S. 867 (1984)(emphasis added); see Vitug v. Multistate Tax Comm'n, 88 F.3d 506, 517-518 (7th Cir. 1996); EEOC v. Clay Printing Co., 955 F.2d 936, 946 (4th Cir. 1992); Diamond v. T. Rowe Price Associates, Inc., 852 F.Supp. 372, 397 n. 123 (D.Md. 1994); Drake v. Minnesota Mining & Mfg. Co., 134 F.3d 878, 886 (7th Cir. 1998). To succeed on this claim, Plaintiff must present evidence to show both deliberateness and intolerability.

"Deliberateness exists only if the actions complained of were intended by the



employer as an effort to force the employee to quit...."  <u>Bristow v. Daily Press, Inc.</u>, 770 F.2d 1251, 1255 (4th Cir. 1985).  As for intolerability,

> "Intolerability" is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign....Rather, intolerability is...assessed by the objective standard to whether a reasonable person in the employee's position would have felt compelled to resign.

<u>Blistein v. St. John's College</u>, 74 F.3d 1459, 1468 (4th Cir. 1996), <u>overruled in part on other grounds</u>, <u>Oubre v. Entergy Operations, Inc.</u>, 522 U.S. 422, 428 (1998).

The evidence presented is not sufficient to meet this standard.  First, there is no evidence that the actions complained of were intended by Plaintiff's employer as an effort to force her to quit.  As late as September 27, 2004, two days before Plaintiff's resignation, the Defendant was urging Plaintiff to continue with her work and was offering her opportunities to continue with her FSR training.  <u>Plaintiff's Deposition, Exhibit 19</u>; <u>see</u> also <u>Plaintiff's Deposition</u>, pp. 58-60, 79, 133, 140; <u>Maxwell Deposition</u>, pp. 27, 29-30, 54; <u>Dunn Affidavit</u>, ¶ 11.  Further, Plaintiff's testimony that she was receiving the "silent treatment" and that Maxwell was being "quieter than what he normally was" (assumed to be true for purposes of summary judgment) is simply not sufficient evidence to create a genuine issue of fact as to whether Plaintiff's working conditions were so intolerable that a reasonable person in her position would have felt compelled to resign. <u>See</u> <u>Matvia v. Bald Head Island Mgmt.</u>, 259 F.3d 261, 273 (4th Cir. 2001) [Denying a claim for constructive discharge and noting that "co-worker ostracism [and] denial of management position...would not have compelled the reasonable person to resign.  These incidents might have made the workplace less enjoyable for the reasonable person, but not intolerable."]; <u>Carter v. Ball</u>, 33 F.3d 450, 459 (4th Cir. 1994) ["Dissatisfaction with work assignments, feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign."];

18



<u>Drake</u>, 134 F.3d at 886 ["More than ordinary discrimination is necessary to establish a constructive discharge claim; in the 'ordinary' case, an employee is expected to remain employed while seeking redress"]; <u>see</u> also <u>Bolden v. PRC, Inc.</u>, 43 F.3d 545, 552 (10th Cir. 1994), <u>cert. denied</u>, 516 U.S. 826 (1995). Therefore, Plaintiff's claim that she was constructively discharged from her employment in retaliation for having filed her SCHAC complaint in June 2004 is without merit.

   Plaintiff's retaliation claim should be dismissed.

### III.

### (Constructive Discharge Claim under Title VII)

   Following her resignation from the Bank, Plaintiff filed a second charge of discrimination on September 16, 2005 complaining that she had been retaliated against and forced to resign her employment. <u>Plaintiff's Deposition, Exhibit 14</u>. Defendant asserts, <u>inter alia</u>, that to the extent Plaintiff is attempting to bring this claim as a Title VII claim, it is time barred because Plaintiff did not file her administrative charge relating to this claim within three (300) days of the alleged unlawful employment practice, as required by statute. <u>See</u> 29 U.S.C. § 626(d)(2), 636(b). Defendant notes that, since Plaintiff resigned her employment on September 29, 2004, she had until July 26, 2005 to file her claim of discrimination, but that her SCHAC charge was not filed until September 22, 2005, fifty-eight (58) days past the required deadline.

   Plaintiff argues that her charge of discrimination states that it was "perfected from information received July 26, 2005", and that her administrative charge was therefore timely filed. No further argument or rationale is offered for this statement,[15] and in any event it is readily apparent

---

   [15]Plaintiff did file a pre-complaint questionnaire, which can in some circumstances constitute the filing date for a charge. <u>Montes v. Vail Clinic</u>, 497 F.3d 1160 (10th Cir. 2007). However, that
(continued...)

19



that Plaintiff would have known if she believed she was being forced to resign her employment because of actions of the Defendant at the time that event occurred. Without any explanation from the Plaintiff as to why this claim should not be deemed to have been "perfected" until July 26, 2005, her assertion that her SCHAC charge was timely filed is simply without merit. In any event, for the reasons already discussed in Section II of this Report and Recommendation, <u>supra</u>, even if Plaintiff could properly assert a Title VII constructive discharge claim in this action, she has failed to present sufficient evidence to avoid summary judgment on this claim.

Therefore, Plaintiff's Title VII constructive discharge cause of action should be dismissed.

## IV.

## (Breach of Contract Claim)

In her fourth cause of action, Plaintiff alleges that the Defendant's employee handbook constituted a contract for employment, and that the Defendant violated the conditions of this employment contract by failing to promote her, by allowing her to be subjected to harassment and retaliation, and by constructively discharging her. Defendant argues that Plaintiff has failed to set forth any evidence of the existence of an employment contract, and the undersigned is constrained to agree.

It is undisputed that South Carolina is an employment at-will state. <u>Angus v. Burroughs & Chapin Co.</u>, 596 S.E.2d 67, 70 (S.C.Ct.App. 2004); <u>Conner v. City of Forest Acres</u>, 560

---

[15](...continued)
questionnaire is dated July 27, 2005, one day past the deadline, and was not thereafter filed until July 28, 2005. <u>Plaintiff's Deposition, Exhibit 13</u>. *Cf.* <u>Brown v. Consolidated Freightway</u>, 152 F.R.D. 656, 658-659 (N.D.Ga. 1993) ["[F]ederal complaints filed even one day after the expiration of [filing] period are untimely and...subject to dismissal...."].



S.E.2d 606 (S.C. 2002). When an employee is an employee at-will, either party has the right to terminate the employee relationship at any time, for any reason or no reason at all, without incurring liability. Horton v. Darby Elec. Co., Inc., 599 S.E.2d 456, 460 (S.C. 2004); Dodgens v. Kent Manufacturing Co., 955 F.Supp. 560, 566 (D.S.C. 1997); Ludwig v. This Minute of Carolina, Inc., 337 S.E.2d 213, 214-215 (S.C. 1985); Gause v. Doe, 451 S.E.2d 408, 409 (S.C.Ct.App. 1994); Toth v. Square D Co., 377 S.E.2d 584, 587 (S.C. 1989) [Gregory, C.J. dissenting]. While this at-will status can be altered by the creation of a "contract" between the employee and employer, or if an employer issues policies that alter the at-will employment status of the relationship; Hessenthaler v. Tri-County Sister Help, Inc., 616 S.E. 2d 694, 697 (S.C. 2005); Small v. Springs Industries, Inc., 357 S.E.2d 452, 455 (S.C. 1987); to alter the at-will relationship between the parties, the cited provisions or policies must be drafted in sufficiently mandatory terms to give rise to a reasonable expectation on the part of the employee of continued employment. Further, to then establish a breach of contract, the employee must show that the employer breached the pertinent provisions or policies at issue. Id.

Plaintiff argues that the handbook language at issue here is sufficiently mandatory in its terms to make the handbook a binding contract. However, the introduction portion of the handbook specifically states that the contents of the handbook "are presented as guidelines of some of the Bank's current policies and procedures, and they may be changed and updated at the sole discretion of the Bank when necessary." The language then goes on to state, *in bold type*, that the handbook is not intended to create a contract between the Bank and any employee, that nothing in the handbook binds the Bank or any employee to a specific or definite period of employment, and that employees are "at-will". See Plaintiff's Exhibit [Employee Handbook]. The very next page (page A-2) continues on in bold type explaining what at-will employment means. Further, according

21



to the language of the handbook and policies of the Defendant, new employees were required to read and sign the disclaimer and acknowledgment section of the handbook, and Plaintiff conceded at her deposition that she had signed this disclaimer.  <u>Plaintiff's Deposition</u>, pp. 146-147; <u>see</u> <u>Plaintiff's Deposition, Exhibit 17</u>.

Nevertheless, Plaintiff argues in her brief that the equal employment opportunity language in the handbook is "very specific and mandatory", and is sufficient to create an issue of fact for the jury as to whether binding obligations had been created.  The language referred to by the Plaintiff reads as follows:

> It is the policy of South Carolina Bank & Trust to extend equal employment opportunities to all qualified applicants regardless of their race, color, sex, age, religious belief, national origin, disability, or status as a protected veteran. While you and the Bank are completely free to end employment at any time and for any reason, federal and state law may protect you from terminations or other employment decisions that are based on race, color, sex, age, religious belief, national origin, disability, or veteran status.
>
> *                    *                    *
>
> We expect you as an employee to accept and comply with this policy and with all of the policies and rules of the bank.

<u>See</u> <u>Plaintiff's Exhibit [Handbook]</u>, p. B-1.

The undersigned can find no employment contract in this language.  There is no commitment for employment for a certain term or duration in this language, and under the applicable caselaw no contract was created by this language. <u>See generally</u>, <u>Hessenthaler</u>, 616 S.E.2d at 698-699 [general policy statement of non-discrimination does not create an expectation that employment is guaranteed for any specific duration or that a particular process must be followed before an employee may be fired].  Further, the Defendant's handbook had conspicuous disclaimer language stating that the handbook was not an employment contract, that there was no commitment by either party to

22



specific or definite terms of employment, and that all employees of the Bank are at-will.  Wadford v. Hartford Fire Ins. Co., No. 87-2872, 1988 WL 492127 at *4 (D.S.C. 1988) ["[A] policy or representation must limit the duration of employment or the employer's right to terminate employment in order to alter at-will status." ]; Storms v. Goodyear Tire & Rubber Co., 775 F.Supp. 862, 867 (D.S.C. 1991) [noting that language cited by the employee was "not couched in mandatory terms and [did] not contain language that specifically [limited] the employer's right to demote or terminate [the Plaintiff] without cause"].

Finally, Plaintiff herself specifically testified during her deposition that she did not have a written employment contract with the Defendant, nor had anyone ever made any verbal promises to her concerning the conditions of her employment.  Plaintiff's Deposition, pp. 144-145. Plaintiff also testified that she understood that the handbook was not a contract of employment. Plaintiff's Deposition, pp. 145-146. This testimony is fatal to Plaintiff's claim.  Plaintiff's breach of contract claim is without merit and should be dismissed.

### Conclusion

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted**, and that this case be **dismissed**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

October 30, 2007

